IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES IRWIN MCCABE,  :  Petitioner  :  :   No. 1:20-cv-2278 v.  :  :   (Judge Rambo) BRENDA MASON, *et al.*,  :  Respondents  : | |

# MEMORANDUM

On December 7, 2020, *pro se* Petitioner James Irwin McCabe ("Petitioner"), who is presently incarcerated at the State Correctional Institution Mahanoy in Frackville, Pennsylvania ("SCI Mahanoy"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking to challenge a decision by the Pennsylvania Board of Probation and Parole ("PBPP") to deny him parole. (Doc. No. 1.) Following an Order to show cause (Doc. No. 6), Respondents filed their response on January 13, 2021 (Doc. No. 9). After receiving an extension of time (Doc. Nos. 10, 11), Petitioner filed his traverse on March 3, 2021 (Doc. No. 18). Accordingly, Petitioner's § 2254 petition is ripe for disposition.

## I.   BACKGROUND

In 1985, in Warren County, Pennsylvania, Petitioner was charged with rape, corruption of minors, indecent assault, statutory rape, and involuntary deviate sexual intercourse. (Doc. No. 9-1 at 4.) In 1986, Petitioner pled nolo contendere to statutory rape, corruption of minors, and indecent assault, and the Court of Common

Pleas for Warren County sentenced him to two (2) to six (6) years' incarceration. (*Id.* at 2-3.) The basis for Petitioner's convictions was his repeated rape of a nine (9) year old girl and twelve (12) year old girl. (*Id.* at 6.) The twelve (12) year old girl became pregnant from the rapes. (*Id.*) Petitioner was subsequently released on parole and was discharged from parole on January 30, 1992. (*Id.* at 8.)

On March 6, 2010, in Fayette County, Pennsylvania, Petitioner was charged with fifteen (15) counts of rape, involuntary deviate sexual intercourse, aggravated indecent assault, indecent assault, sexual assault, and statutory sexual assault. (*Id.* at 10-19.) These charges stemmed from Petitioner's rape of a ten (10) year old girl since she was two (2) years old. (*Id.*) The victim was the daughter of Petitioner's previous rape victim. (*Id.* at 21.) Pursuant to a plea agreement, the Court of Common Pleas for Fayette County sentenced Petitioner to ten (10) to twenty (20) years' incarceration for rape by forcible compulsion and rape of a child. (*Id.* at 23-55.) Petitioner's controlling minimum sentence expired on March 15, 2020, and his controlling maximum sentence expires on March 15, 2013. (*Id.* at 51.)

On December 5, 2019, the PBPP denied Petitioner's application for parole. (*Id.* at 57.) The PBPP denied Petitioner's application for the following reasons: (1) a negative recommendation by the Department of Corrections ("DOC"); (2) Petitioner's prior unsatisfactory parole supervision history; (3) reports, evaluations, and assessments indicating that he posed a risk to the community; (4) Petitioner's

2

failure to demonstrate motivation for success; (5) Petitioner's minimization of the nature and circumstances of his offenses; (6) his refusal to accept responsibility for his offenses; and (7) Petitioner's lack of remorse. (*Id.*) The PBPP also noted that "repeated behaviors necessitate [a] longer period of stability." (*Id.*) The PBPP noted that Petitioner would be reviewed for parole again in or after November 2024. (*Id.* at 58.) The PBPP noted further that at Petitioner's next interview, it would consider whether Petitioner: (1) received a favorable recommendation from the DOC; (2) maintained a clear conduct record; and (2) completed the DOC's prescriptive programs. (*Id.*)

In his § 2254 petition, Petitioner avers that the PBPP's decision to deny him parole violates his rights under the Fourteenth Amendment's Due Process Clause. (Doc. No. 1 at 5.) Petitioner suggests that the PBPP used "reports, evaluations, and assessments critical of [his] conduct, [without his] knowledge, and [without] the opportunity to defend" against them. (*Id.*) He argues that the PBPP's use of such information caused reputational harm, in violation of Article I, Sections I and II of the Pennsylvania Constitution. (Doc. No. 1-1 at 16-29.) Petitioner further suggests that the PBPP violated his due process rights by not providing copies of the documents it reviewed to Petitioner. Finally, he challenges the inability to appeal the PBPP's decision to the Court and asserts that 2 Pa. C. S. § 101, which prohibits such an appeal, is unconstitutional. (*Id.* at 21-26.) As relief, Petitioner requests that

3

the Court find that his due process rights were violated and order his immediate release. (*Id.* at 29-32.)

## II. DISCUSSION

The United States Supreme Court has held that the granting of parole prior to the expiration of a prisoner's maximum term of imprisonment is not a liberty interest protected by the Fourteenth Amendment's Due Process Clause. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Moreover, the existence of a state parole system alone does not create a constitutionally protected liberty interest. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Pennsylvania's Probation and Parole Act does not grant state prisoners any constitutionally protected liberty interest in being released on parole prior to the expiration of their controlling maximum sentences. *See McFadden v. Lehman*, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997).

However, while Petitioner has no procedural due process right to parole, the United States Court of Appeals for the Third Circuit has held that "even if a state statute does not give rise to a liberty interest in parole release under *Greenholtz*, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *See Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). Consequently, a federal court may review a decision by the PBPP only

for abuse of discretion. *See id.* Upon such review, relief is available only if the petitioner can show that parole was arbitrarily denied based on some impermissible reason such as "race, religion, or political beliefs," or that the PBPP made its determination based on "frivolous criteria with no rational relationship to the purpose of parole." *See id.* at 236 n.2. Relief is also available if the PBPP's determination was rendered in the absence of the following due process protections:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking parole.

*Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972). It is clear, therefore, that "federal courts . . . are not to second-guess parole boards, and the requirements of substantive due process are met if there is some basis for the challenged decision." *See Hunterson v. DiSabato*, 308 F.3d 236, 246 (3d Cir. 2002); *see also Coady*, 251 F.3d at 487. Moreover, the "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" *See Hunterson*, 308 F.3d at 247.

5

In the instant case, Petitioner does not allege that he was denied parole based on race, religion, ethnicity, political beliefs, or another impermissible reason. The record before the Court indicates that the PBPP's decision to deny Petitioner parole was based upon the following reasons: (1) a negative recommendation by the Department of Corrections ("DOC"); (2) Petitioner's prior unsatisfactory parole supervision history; (3) reports, evaluations, and assessments indicating that he posed a risk to the community; (4) Petitioner's failure to demonstrate motivation for success; (5) Petitioner's minimization of the nature and circumstances of his offenses; (6) his refusal to accept responsibility for his offenses; and (7) Petitioner's lack of remorse. (Doc. No. 9-1 at 57.) The PBPP also noted that "repeated behaviors necessitate [a] longer period of stability." (*Id.*) Consequently, the PBPP's decision "was based on its discretion in applying the legitimate factors established by the Pennsylvania Legislature." *See Rodriguez v. Mooney*, No. 3:14-cv-139, 2017 WL 4320323, at *4 (M.D. Pa. Sept. 28, 2017); *see also* 61 Pa. Cons. Stat. § 6135 (setting forth the criteria the PBPP is to consider when deciding whether to grant or deny parole). Petitioner has not demonstrated that any of the factors considered by the PBPP shock the conscience or that such factors constitute behavior that is intended to injure him a way not justified by any legitimate government interest. *See McGinnis v. Royster*, 410 U.S. 263, 277 (1973) (noting that it is a "legitimate desire of the state legislature to afford state prison officials an adequate opportunity to

evaluate both an inmate's conduct and his rehabilitative progress before he is eligible for parole"); *Gordon v. Wenerowicz*, No. 1:10-cv-1257, 2011 WL 5509538, at *4 (M.D. Pa. Nov. 10, 2011) (concluding that a denial of parole because the petitioner poses a risk to the community is not "conscience shocking").

As noted *supra*, Petitioner maintains that the PBPP violated his due process rights by not providing him copies of the documents considered to deny him parole and by using information that damaged his reputation. Petitioner provides no authority, and the Court has not located any authority, suggesting that Petitioner had a right to such copies. Moreover, contrary to Petitioner's assertion, an individual does not have a protected interest in reputation alone. *See Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Damage to reputation is only actionable if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution. *See Paul*, 424 U.S. at 701-12. Denial of parole, however, does not satisfy this requirement because Plaintiff has no right to release on parole under the United States Constitution or Pennsylvania law. *Greenholtz*, 442 U.S. at 7; *Weaver v. Pa. Bd. of Probation and Parole*, 688 A.2d 766, 770 (Pa. Commw. Ct. 1997).

Petitioner also challenges the inability to appeal the PBPP's decision, arguing that 2 Pa. C. S. § 101, which disallows such an appeal, is unconstitutional. The

Court, however, agrees with the Commonwealth Court of Pennsylvania that a prisoner has no right to appeal a decision of the PBPP denying parole because of the lack of a liberty interest in parole. *See, e.g.*, *Reider v. Bd. of Probation and Parole*, 514 A.2d 967 (Pa. Commw. Ct. 1986). Rather, "[p]arole is a matter of grace and mercy shown to a prisoner who has demonstrated to the [PBPP's] satisfaction his ability to function as a law abiding member of society." *Id.* at 971. While a released prisoner has a constitutionally guaranteed right to seek review of an adverse parole revocation decision, Petitioner, as a result of his confinement, has no such right. *See Rogers v. Pa. Bd. of Probation and Parole*, 724 A.2d 319, 322-23 (Pa. 1999). Thus, Petitioner has failed to demonstrate that he is entitled to federal habeas corpus relief under the Fourteenth Amendment's Due Process Clause.

### III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In the instant matter, jurists of reason would not find the disposition of Petitioner's petition debatable.  As such, no COA will issue.

### IV.  CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) will be denied and a COA will not issue. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: March 8, 2021

9